**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY, | CIVIL DIVISION |
| Plaintiff, | Civil Action No. 1:21-cv-538 |
| v. | |
| STEVEN KRAWATSKY, | |
| DAVID FINKELSTEIN,<br>2704 Bartol Avenue<br>Baltimore, Baltimore County, MD 21209 | |
| SHORESH, INC., and<br>3723 Old Court Road, Suite 206<br>Baltimore, Baltimore County, MD 21208 | |
| MARKEL INSURANCE COMPANY<br>Ten Parkway North<br>Deerfield, Lake County, IL 60015 | |
| Defendants. | |

## AMENDED COMPLAINT IN DECLARATORY JUDGMENT ACTION

Plaintiff, United States Liability Insurance Company ("USLI"), by and through its attorneys, avers the following in support of the herein Amended Complaint in Declaratory Judgment:

## INTRODUCTION

Allegations of sexual abuse, molestation, and exploitation of children are outside the scope of one's employment as a matter of law and, accordingly, are excluded from insurance coverage. And Maryland has a clear public policy of protecting minors from abuse—including sexual abuse. This important public policy precludes insurance coverage for civil lawsuits arising from claimed sexual abuse, molestation, and/or exploitation of minors.

Further, the insuring agreement, policy definitions, and exclusions operate to preclude any indemnity coverage for the claims asserted in the underlying lawsuit against David Finkelstein and Camp Shoresh under the D & O Section of USLI's Policy. Likewise, each of the claims asserted against David Finkelstein and Camp Shoresh are excluded from coverage under the EPL Section of the USLI Policy because EPL coverage protects against claims arising out of the employer-employee relationship. Or stated another way, the EPL Section does not provide coverage for claims—like those asserted against David Finkelstein and Camp Shoresh—arising out of the alleged sexual molestation, exploitation, and assault of minors committed by an employee. Instead, the claims asserted against David Finkelstein and Camp Shoresh (all of which arise out of Steven Krawatsky's alleged sexual abuse, molestation, and/or exploitation of minors), trigger coverage under the Commercial General Liability Policies (and/or Umbrella Policies) issued by Markel Insurance Company to David Finkelstein and Camp Shoresh.

Thus, USLI seeks from this Court a declaration that it has no obligation to pay Steven Krawatsky, David Finkelstein, and/or Camp Shoresh's defense costs or to indemnify them for the civil claims asserted against them in the underlying lawsuit.

## THE PARTIES

1.     Plaintiff, United States Liability Insurance Company, is an insurance company organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Wayne, Pennsylvania. USLI is a citizen of the Commonwealth of Pennsylvania.

2.     Upon information and belief, Defendant Steven Krawatsky ("Krawatsky") is an adult citizen of the State of Maryland who resides at 3119 Northbrook Road, Pikesville, Maryland, 21208.

3.      Upon information and belief, Defendant David Finkelstein ("Finkelstein") is an adult citizen of the State of Maryland who resides at 2704 Bartol Avenue, Baltimore, Maryland 21209. At all times relevant, Finkelstein served as the Executive Director of Shoresh, Inc.

4.      Upon information and belief, Defendant Shoresh, Inc. ("Camp Shoresh") is a Maryland non-profit organization with a principal office located at 3723 Old Court Road, Suite 206, Baltimore, Maryland 21208

5.      Upon information and belief, Defendant Markel Insurance Company ("Markel") is an Illinois corporation with a principal office located at Ten Parkway North, Deerfield, Illinois 60015.

## VENUE AND JURISDICTION

6.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332(a)(3), the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), because a substantial part of the at-issue events or omissions occurred in this judicial district.

8.      For the reasons set forth below, an actual, ripe, and justiciable controversy has arisen between the parties as to their respective rights and obligations under the insurance policy issued by USLI to Shoresh, Inc.

9.      This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

10.    Camp Shoresh provides year-round Jewish education programming for children, teens, college students, and adults.[1] Each summer, Camp Shoresh runs a day camp for children ages 3 through 16 ("the day camp").[2]

11.    Upon information and belief, from 2010 through 2015, Krawatsky served as the head counselor of the day camp's lower boys division. The ages of the youths in the lower boys division range from second through fifth grades.

12.    Upon information and belief, Finkelstein serves as the Executive Director of Shoresh, Inc.

13.    Upon information and belief, at the time of the alleged sexual abuse of B.A., O.B., and S.B., Shoresh, Inc., was the named insured under several Commercial Lines Policies issued by Markel, including:

- Primary Policy No. 8502CY259304-11, issued for the policy period November 1, 2013 to November 1, 2014;

- Primary Policy No. 8502CY259304-12, issued for the policy period November 1, 2014 to November 1, 2015;

- Primary Policy No. 8502CY259304-13, issued for the policy period November 1, 2015 to November 1, 2016;

- Primary Policy No. 8502CY259304-14, issued for the policy period November 1, 2016 to November 1, 2017;  and

- Primary Policy No. 8502CY259304-15, issued for the policy period November 1, 2017 to November 1, 2018.

(Collectively, "the Markel CGL Policies").

---

[1] *See* https://www.shoresh.com/.
[2] *See* https://www.shoresh.com/wp-content/uploads/2019/12/brochure_application-2020-web.pdf.

14.     Also, upon information and belief, at the time of the alleged sexual abuse of B.A., O.B., and S.B., Shoresh, Inc. was the named insured under the following Umbrella Policies issued by Markel, including:

- Umbrella Policy No. 4602CY429456-0, issued for the policy period June 17, 2015 to November 1, 2015;

- Umbrella Policy No. 4602CY429456-1, issued for the policy period November 15, 2015 to November 15, 2016;

- Umbrella Policy No. 4602CY429456-2, issued for the policy period November 15, 2016 to November 15, 2017; and

- Umbrella Policy No. 4602CY429456-3, issued for the policy period November 15, 2017 to November 15, 2018.

(Collectively, the "Markel Umbrella Policies").

15.     Further, at the time of the alleged sexual abuse of B.A., O.B., and S.B., Shoresh, Inc. was the named insured under a Non Profit Directors and Officers Policy, Policy No. NPP1565292B, issued by United States Liability Insurance Company to Shoresh, Inc., for the single policy period April 1, 2017 to April 1, 2018 ("the USLI Policy."). [A true and correct copy of the Policy is attached hereto as **Exhibit A.**]

16.     In February 2018, USLI learned that five children had alleged that they had been "inappropriately touched" by Krawatsky. No lawsuit had been initiated at that time.

17.     On February 22, 2019, USLI received a copy of the Counter-Complaint[3] for Damages filed in the Circuit Court for Montgomery County, Maryland and captioned: *Rachel Avrunin and Joel Avrunin, Sharon and Scott Becker, Chaim Levin, Defendants and Counter Plaintiffs, and S.B. and B.A., minor children by and through their parents, Plaintiffs v. Steven*

---

[3] The Counter-Complaint was filed in response to a 74-page defamation action filed by Krawatsky against the Plaintiff-parents and others (hereinafter the "Defamation Action").

*Krawatsky, et al., Plaintiffs and Counter Defendants, and David Finkelstein, Shoresh, Inc., Defendants.* [A true and correct copy of the Counter-Complaint is attached hereto as **Exhibit B**.]

18.    Ultimately, the Counter-Complaint was dismissed. Thereafter, B.A. and S.B. filed a new lawsuit (which was consolidated with the Defamation Action) styled: *Rachel Avrunin and Joel Avrunin, Sharon and Scott Becker, Chaim Levin, Yaniv and Sharon Barard, Defendants and Plaintiffs and S.B. and B.A., minor children by and through their parents, Plaintiffs v. Steven Krawatsky, et al., Plaintiffs and Defendants and David Finkelstein, Shoresh, Inc., and Israel Charity Fund, Inc.* (hereinafter the "S.B./B.A. Amended Complaint," or "S.B./B.A. lawsuit," or "S.B./B.A. Action"). [A true and correct copy of the S.B./B.A. Amended Complaint is attached hereto as **Exhibit C**.]

19.    The S.B./B.A. Amended Complaint included the following causes of action:

- Count I – Battery (S.B. v. Krawatsky);

- Count II – False Imprisonment (S.B. v. Krawatsky);

- Count III – Invasion of Privacy (S.B. v. Krawatsky);

- Count IV – Battery (B.A. v. Krawatsky);

- Count V – False Imprisonment (B.A. v. Krawatsky);

- Count VI – Invasion of Privacy (B.A. v. Krawatsky);

- Count VII – Negligence (S.B. v. Finkelstein and Camp Shoresh);

- Count VIII – Negligence (B.A. v. Finkelstein and Camp Shoresh);

- Count IX – Violation of 18 U.S.C. §§ 1341 and 1343 (B.A. & S.B., Joel and Rachel Avrunin and Sharon Becker v. Finkelstein, Krawatsky, Camp Shoresh, and The Israel Charity Fund);

- Count X – Trafficking with Respect to Forced Labor in Violation of 18 U.S.C. §§ 1590(a) and 1595(a) (S.B. v. Krawatsky, Finkelstein, and Camp Shoresh);

- Count XI – Benefitting From a Venture that Trafficked Children, or by Force, Fraud or Coercion in Violation of 18 U.S.C. §§ 1591(a)(2) and 1595(a) (S.B. v. Camp Shoresh);

- Count XII – Sex Trafficking of Children, or by Force, Fraud or Coercion is violation of 18 U.S.C. §§ 1591(a) and 1595(a) (S.B. v. Krawatsky, Camp Shoresh, and Finkelstein);

- Count XIII – Sexual Exploitation of Children in Violation of 18 U.S.C. § 2251(a) (S.B. v. Krawatsky, Finkelstein, and Camp Shoresh);

- Count XIV – Sexual Exploitation of Children in Violation of 18 U.S.C. § 2251(a) (B.A. v. Krawatsky, Finkelstein, and Camp Shoresh);

- Count XV – Aggravated Sexual Abuse in Violation of 18 U.S.C. § 2241 (S.B. v. Krawatsky); and

- Count XVI – Transportation of Minor to Engage in Criminal Sexual Activity in Violation of 18 U.S.C. §§ 2421 and 2423 (S.B. v. Krawatsky).

20.    The S.B./B.A. Amended Complaint set forth allegations of sexual abuse, molestation, and/or exploitation against Krawatsky, including:

- In 2014 and 2015, Krawatsky raped S.B. while other campers played sports;

- Krawatsky "punished" S.B. with various forms of inappropriate touching, including: oral penetration of S.B. with Krawatsky's penis; anal penetration of S.B. with Krawatsky's penis; and S.B. receiving oral sex from Krawatsky;

- In 2014 and 2015, Krawatsky offensively and inappropriately touched S.B. at Camp Shoresh;

- In 2015, Krawatsky took cell phone photographs of S.B. while he engaged in sexual acts with S.B. at Camp Shoresh;

- In July 2015, Krawatsky engaged in inappropriate and offensive touching of S.B. at Guppy Gulch Waterpark in Delta, Pennsylvania;

- In 2015, Krawatsky offensively and inappropriately touched B.A. at Camp Shoresh; and

- In 2015, Krawatsky took a pornographic photograph (or photographs) of B.A.

21.    The S.B./B.A. Amended Complaint set forth allegations of negligence against Finkelstein and Camp Shoresh, including:

- Finkelstein and/or Camp Shoresh's alleged failure to keep campers safe at Camp Shoresh;

- Finkelstein and/or Camp Shoresh's alleged failure to adopt recommendations and best practices presented by the Baltimore Child Advocacy Center;

- Finkelstein and/or Camp Shoresh's alleged provision of false information to law enforcement;

- Finkelstein and/or Camp Shoresh's alleged acts of misleading witnesses and parties to the law enforcement investigation; and

- Finkelstein and/or Shoresh's alleged failure to develop and/or implement appropriate policies and procedures to prevent child abuse at Camp Shoresh.

22.    In December 2019, an Amended Complaint for Damages and Jury Trial Demand was filed in the Circuit Court for Montgomery County, Maryland and captioned: *O.B., a minor child by and through his parents, Plaintiff v. Steven Krawatsky, David Finkelstein, Shoresh, Inc. and Israel Charity Fund, Inc., Defendants* (hereinafter the "O.B. Amended Complaint," or "O.B. lawsuit," or "O.B. Action"). [A true and correct copy of the O.B. Amended Complaint is attached hereto as **Exhibit D**.]

23.    The O.B. Amended Complaint included the following causes of action:

- Count I – Battery (O.B. v. Krawatsky);

- Count II – False Imprisonment (O.B. v. Krawatsky);

- Count III – Assault (O.B. v. Krawatsky);

- Count V – Invasion of Privacy – Unreasonable Publicity Given to Private Life (O.B. v. Finkelstein, Krawatsky, and Camp Shoresh); and

- Count VI – Violation of 18 U.S.C. §§ 1341 and 1343 (O.B. v. Finkelstein, Krawatsky, Camp Shoresh, and The Israel Charity Fund).

24.     The O.B. Amended Complaint made general references to the alleged abuse, including sexual abuse, of O.B. by Krawatsky (e.g., "Rabbi K molested, abused, and/or battered O.B. while O.B. was a camper at Camp Shoresh," O.B. Amended Complaint, ¶ 313).

25.     In addition to negligence claims against Finkelstein and/or Camp Shoresh, the O.B. Amended Complaint includes allegations that Camp Shoresh and Finkelstein publicized private facts about O.B.'s behavior and health to members of the public at large. (O.B. Amended Complaint, ¶¶ 333 through 337.)

26.     All of the counts set forth in the S.B./B.A. Amended Complaint, as well as the O.B. Amended Complaint, asserting claims for alleged violations of various federal laws were dismissed, without prejudice, in February 2020 via stipulation of the parties. [A true and correct copy of the Amended Notice of Voluntary Dismissal of Federal Claims Without Prejudice is attached hereto as **Exhibit E**.]

27.     On June 17, 2020, the Court entered an Order consolidating the O.B. Action with the S.B./B.A. Action and Defamation Action.

28.     In the same Order, the Court noted that the "Amended Counter Complaint/Complaint for Damages and Jury Demand submitted to this Court on March 13, 2020 is entered as the operative pleading for the claims of these parties."[4]

---

[4] As of the filing of this Amended Complaint in Declaratory Judgment Action, it is the understanding of USLI that the Consolidated Amended Complaint is the operative Complaint in the underlying matter.

29.     The Amended Counter Complaint/Complaint for Damages and Jury Demand was filed in the Circuit Court for Montgomery County, Maryland and captioned: *Rachel Avrunin and Joel Avrunin, Sharon and Scott Becker, Chaim Levin, Yaniv and Sharon Barard, Defendants and Counter Plaintiffs, and S.B., B.A., and O.B. minor children by and through their parents, Plaintiffs, v. Steven Krawatsky, et al., Plaintiffs and Counter Defendants, and David Finkelstein and Shoresh, Inc., Defendants* (hereinafter the "Consolidated Amended Complaint," or "Consolidated lawsuit," or "Consolidated Action"). [A true and correct copy of the Consolidated Amended Complaint is attached hereto as **Exhibit F**.]

30.     The factual averments set forth in the Consolidated Amended Complaint relating to the alleged abuse of S.B., B.A., and O.B. are substantially the same as those set forth in the S.B./B.A. Amended Complaint and O.B. Amended Complaint.

31.     But the Consolidated Amended Complaint also includes allegations that Krawatsky offered S.B. money in exchange for inappropriate "actions." (Consolidated Amended Complaint, ¶ 282.)

32.     Further, the Consolidated Amended Complaint includes additional detail regarding the alleged abuse of O.B. by Krawatsky. For example, it is alleged that "Rabbi K offered O.B. money to engage in sexual acts with him." (Consolidated Amended Complaint, ¶¶ 152, 171.)

33.     And it is alleged that Krawatsky "punished" O.B. with various forms of inappropriate and offensive touching, and that such touching occurred in 2014 (and perhaps earlier summers). (Consolidated Amended Complaint, ¶¶ 160-161.)

34.     The Consolidated Amended Complaint also includes allegations that Krawatsky assaulted O.B. and touched O.B. in a harmful or offensive manner in 2015. (Consolidated Amended Complaint, ¶¶ 169-170.)

35.     The Consolidated Amended Complaint asserts the following counts against Krawatsky:

- Count I – Battery (S.B.);

- Count II – False Imprisonment (S.B.);

- Count III – Invasion of Privacy (S.B.);

- Count IV – Battery (B.A.);

- Count V – False Imprisonment (B.A.);

- Count VI – Invasion of Privacy (B.A.);

- Count XIII – False Imprisonment (O.B.);

- Count XIV – Assault (O.B.); and

- Count XV – Invasion of Privacy – Unreasonable Publicity Given to Private Life (O.B.).

36.     The factual averments set forth in the Consolidated Amended Complaint relating to Finkelstein and/or Camp Shoresh's negligence and invasion of privacy are substantially the same as those set forth in the S.B./B.A. Amended Complaint and O.B. Amended Complaint.

37.     But the Consolidated Amended Complaint also includes allegations that Finkelstein and Camp Shoresh engaged in intentional conduct to cause emotional harm to S.B., O.B., and B.A. (Consolidated Amended Complaint, ¶¶ 499-508.)

38.     For example, it is alleged that Finkelstein "personally undertook to engage in a calculated, intentional campaign to spread lies, half-truths, and other misleading information about O.B., B.A., S.B. and their families" and that Camp Shoresh allegedly "supported [Finkelstein's] efforts with manpower and financial resources and mirrored his efforts." (Consolidated Amended Complaint, ¶¶ 500-501.)

39.     The Consolidated Amended Complaint asserts the following counts against Finkelstein and/or Camp Shoresh:

- Count VII – Negligence (S.B. v. Finkelstein)

- Count VII – Negligence (B.A. v. Finkelstein)

- Count IX – Negligence (O.B. v. Finkelstein)

- Count X – Negligence (B.A. v. Camp Shoresh)

- Count XI – Negligence (S.B. v. Camp Shoresh)

- Count XII – Negligence (O.B. v. Camp Shoresh)

- Count XV – Invasion of Privacy – Unreasonable Publicity Given to Private Life (O.B. v. Shoresh and Rabbi Finkelstein)

- Count XVI – Intentional Infliction of Emotional Distress (O.B., B.A., AND S.B. v. Shoresh and Rabbi Finkelstein).

40.     Thereafter, on October 6, 2020—without the requisite leave of court—an Amended Counter Complaint/Complaint for Damages and Jury Demand was filed in the Circuit Court for Montgomery County, Maryland and captioned: *Rachel Avrunin and Joel Avrunin, Sharon and Scott Becker, Chaim Levin, Yaniv and Sharon Barard, Defendants and Counter Plaintiffs, and S.B., B.A., and O.B., minor children by and through their parents, Plaintiffs, v. Steven Krawatsky, et al., Plaintiffs and Counter Defendants, and David Finkelstein and Shoresh, Inc., Defendants* (hereinafter the "Consolidated Second Amended Complaint"). Upon information and belief, the Consolidated Second Amended Complaint has been, or will be, withdrawn.

41.     USLI—pending determination of this declaratory judgment action—is providing Krawatsky with a defense under reservation of rights in the consolidated underlying civil actions filed by and on behalf of S.B., B.A., and O.B (collectively, "the minors").

42.    Likewise, USLI—pending determination of this declaratory judgment action—is providing defenses to Finkelstein and Camp Shoresh under reservation of rights in the consolidated underlying civil actions filed by and on behalf of the minors.

43.    As recently as March 17, 2021, Markel made an affirmative grant of coverage to Finkelstein and Camp Shoresh under the Abuse or Molestation Coverage Endorsement for their alleged negligent acts (including, inter alia, coverage for negligent employment, training, supervision, investigation, reporting to the proper authorities, or failure to so report, or retention or supervision of a person for whom Camp Shoresh was legally responsible). [A true and correct copy of Markel's Reservation of Rights letter dated March 17, 2021 is attached hereto as **Exhibit G.**]

## THE USLI POLICY

44.    The USLI Policy contains three liability coverage sections: (1) the Non Profit Directors and Officers Liability Coverage Section ("the D & O Section"); (2) the Employment Practices Liability Coverage Section ("the EPL Section"); and (3) the Fiduciary Liability Coverage Section ("the Fiduciary Section").

45.    The USLI Policy also contains a Non Profit Professional Liability Common Conditions Section ("the Common Conditions Section"), which applies to the three liability coverage sections.

46.    By endorsement, Section I of the D & O Section states that USLI "will pay on behalf of the **Insured, Loss** in excess of the Retention, not exceeding the Limit of Liability shown on the policy Declarations for which this coverage applies that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** … for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization.** Such

**Claim** must be reported to the **Company** in accordance with Section IV. NOTICE/CLAIM REPORTING PROVISIONS of the COMMON POLICY CONDITIONS."

      47.    The D & O Section contains the following relevant definitions:

**Claim** means:

    a)  Any written demand seeking money damages; or

    b)  Any proceeding initiated against the **Insured,** including any appeal there from before any governmental body legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured** alleging that the **Insured** has committed, or is responsible for, a **Wrongful Act.**

***

**Insured**(s) means the **Organization** and the **Individual Insureds.**

***

**Individual Insureds** means any persons who were, now are, or shall be directors, trustees, officers, **Employees**, or committee members of the **Organization,** including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

***

**Employee** means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and includes leased, part-time, seasonal, and temporary workers, independent contractors, volunteers and interns. An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Act** that results in a **Claim.**

***

**Loss** means damages, settlements, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law. For the purpose of determining the

insurability of punitive damages and exemplary damages, the law of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

\*\*\*

**Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duties, committed or allegedly committed:

1. By the **Organization;** or

2. By the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization** or asserted against an **Individual Insured** because of (1) above.

It is further agreed that the same **Wrongful Act**, an interrelated series of **Wrongful Acts,** or a series of similar or related **Wrongful Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Act** and to have commenced at the time of the earliest **Wrongful Act.**

48.     The D & O Section includes a Personal Injury Exclusion Endorsement, Exclusion IV(A), which provides that USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving "actual or alleged bodily injury, sickness, humiliation, mental anguish, emotional distress, assault, battery, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use [...]."

49.     The D & O Section also includes Exclusion IV(B), which states that USLI shall not be liable for **Loss** in connection with any **Claim** involving any "dishonest, fraudulent or criminal **Wrongful Act** by the **Insured,** however, this exclusion shall not apply unless and until a final adjudication or judgment is rendered against the **Insured** as to this conduct."

50.     The D & O Section also includes Exclusion IV(H), which states that USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of, or in any way involving "any actual or alleged: refusal to employ; termination of employment; employment related coercion; demotion; evaluation; reassignment; discipline; workplace conditions; false imprisonment; defamation; harassment; humiliation; or discrimination of employment; other employment-related practices, policies, acts or omissions; or sexual harassment by the **Insured** against any person(s) or entity; or negligence involving any of the forgoing… It being understood that this exclusion applies whether the **Insured** may be held liable as an employer or in any other capacity and to any obligation to contribute with or indemnify another with respect to such **Claim**."

51.     By endorsement, the EPL Section contains the following Insuring Agreement:

A.     The **Company** will pay on behalf of the **Insured Loss** in excess of the RETENTION, not exceeding the LIMIT OF LIABILITY for which this coverage applies, that an **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** … for **Wrongful Employment Acts** arising solely out of an **Insured's** duties on behalf of the **Organization.**

52.     The EPL section contains the following relevant Definitions:

**Insured**(s) means the **Organization** and the **Individual Insureds.**

\*\*\*

**Individual Insureds** means any persons who were, now are, or shall be directors, trustees, officers, **Employees**, or committee members of the **Organization,** including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.

\*\*\*

**Employee** means any natural person whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business and

includes leased, part-time, seasonal, and temporary workers, independent contractors, volunteers and interns. An **Employee's** status as an **Insured** will be determined as of the date of the **Wrongful Employment Act** that results in a **Claim**.

***

**Third Party** means any person(s) with whom an **Insured** in their capacity as such interacts while the **Insured** is performing duties related to the conduct of the **Organization's** business.

***

**Claim** means:

    (1)    Any written notice received by any **Insured** that any person or entity intends to hold such **Insured** responsible for a **Wrongful Employment Act**; or

    (2)    Any judicial or administrative proceeding initiated against any **Insured** seeking to hold such **Insured** responsible for a **Wrongful Employment Act,** including any proceeding conducted by the Equal Employment Opportunity Commission or similar federal, state or local agency and any appeal there from.

***

**Loss** means damages, settlements, front pay and back pay, pre-judgment and post judgment interest awarded by a court and punitive or exemplary damages to the extent such damages are insurable under applicable law, but does not include fines, penalties, taxes, the multiplied portion of any multiple damage award, and other monetary sanctions that are uninsurable by operation of law. For the purpose of determining the insurability of punitive damages and exemplary damages, the law of the jurisdiction most favorable to the insurability of such damages shall control, provided that such jurisdiction has a substantial relationship to the relevant **Insured** or to the **Claim** giving rise to the damages.

***

**Third Party Harassment** means:

    (1)    Workplace **Harassment** which creates an environment that is hostile, intimidating or offense to a **Third Party**; or

(2)    Sexual **Harassment** including any unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature against a **Third Party;**

Committed or allegedly committed by an **Insured** in their capacity as such while the **Insured** is performing duties related to the conduct of an **Organization's** business.

\*\*\*

**Workplace Tort** means any actual or alleged employment-related:

1.  Misrepresentation;

2.  Negligent supervision, training or evaluation;

3.  Wrongful discipline;

4.  Wrongful deprivation of a career opportunity; or

5.  Failure to enforce written policies and procedures relating to a **Wrongful Employment Act.**

\*\*\*

**Wrongful Employment Act** means any actual or alleged act of:

(1)    **Discrimination;**

(2)    **Harassment;**

(3)    **Retaliation;**

(4)    **Wrongful termination;**

(5)    **Workplace Tort;**

[…]

(9)    Acts described in clauses (1) through (8) above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, telecommunication or similar systems;

Committed or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such involving and brought by any **Employee**, former **Employee** or applicant for employment with the **Organization**; or asserted against an **Individual Insured** because of his/her status as such.

**Wrongful Employment Act** shall also include any actual or alleged act of:

(10)    **Third Party Discrimination**

(11)    **Third Party Harassment**

It is further agreed that the same **Wrongful Employment Act**, an interrelated series of **Wrongful Employment Acts** or a series of similar or related **Wrongful Employment Acts** by one or more **Insureds** shall be deemed to be one **Wrongful Employment Act** and to have commenced at the time of the earliest **Wrongful Employment Act**.

53.     The EPL Section includes a Personal Injury Exclusion Endorsement, Exclusion IV(A), which provides that USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** arising out of, directly or indirectly resulting from or in consequence of or in any way involving "actual or alleged bodily injury, sickness, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault, battery, wrongful entry, eviction, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use. This exclusion shall not apply to **Claims** for mental anguish, emotional distress, invasion of privacy, humiliation, libel, slander or defamation that result from a **Wrongful Employment Act.**"

54.     The EPL Section also includes Exclusion IV(B) which states that USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** involving "conduct of the **Insured** or at the **Insured's** direction that is fraudulent, dishonest or criminal provided that this exclusion will not apply to: (1) **Defense Costs** incurred until such conduct is

proven in fact to be fraudulent, dishonest or criminal; or (2) the strictly vicarious liability of the **Insured** for the fraudulent, dishonest or criminal conduct of another **Insured.**"

55.    Further, the USLI Policy contains the following "Other Insurance" provision:

> This Policy shall be excess of and not contribute with other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this policy.

(*See* Common Policy Conditions, XI, "Other Insurance.")

## THE MARKEL POLICIES

56.    Upon information and belief, the Markel CGL Policies contain multiple insuring agreements.

57.    The Insuring Agreements set forth in Coverage A – Bodily Injury and Property Damage Liability of the Markel CGL Policies provide as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> [***]
>
> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
> 1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> 2)  The "bodily injury" or "property damage" occurs during the policy period; and
>
> 3)  Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no

"employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

[A true and correct copy of an exemplar Markel CGL Policy is attached hereto as **Exhibit H.**]

58.    "Bodily injury" is defined by the Markel CGL Policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

59.    "Occurrence" is defined by the Markel CGL Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

60.    Further, the Markel CGL Policies for the relevant time periods include Abuse or Molestation Coverage Endorsements.

61.    The Insuring Agreements of the Abuse or Molestation Coverage Endorsements included in the Markel CGL Policies provide:

We will pay those sums the insured becomes legally obligated to pay as damages that result in "bodily injury", "property damage", "personal and advertising injury", or any other injury because of abuse, molestation or exploitation arising from negligent employment, training, investigation, reporting to the proper authorities, or failure to so report, or retention and supervision of a person for whom any insured is over ever was legally responsible. Coverage includes the actual, alleged, or threatened abuse, molestation or exploitation by anyone of any person while in the care, custody or control of the insured.

The term "bodily injury" includes mental anguish or emotional distress.

62.    The Insuring Agreements set forth in Coverage B – Personal and Advertising Injury Liability of the Markel CGL Policies provide as follows:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

[***]

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

63.  The term "personal and advertising injury" is defined as follows:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a.  False arrest, detention or imprisonment;

b.  Malicious prosecution;

c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

d.  Oral or written publication, in any matter, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.  Oral or written publication, in any matter, of material that violates a person's right of privacy;

f.  The use of another's advertising idea in your "advertisement"; or

g.  Infringing upon another's copyright, trade dress, or slogan in your "advertisement".

64.  Upon information and belief, under Coverage A – Bodily Injury and Property Damage Liability in the Markel Umbrella Policies, Markel agrees to pay for the "ultimate net loss"

in excess of the "retained limit" because of "bodily injury" or "property damage" to which the insurance applies. Further, coverage is provided only for "bodily injury" or "property damage" caused by an "occurrence" and only if the "bodily injury" or "property damage" takes place during the policy period. [A true and correct copy of an exemplar Markel Umbrella Policy is attached hereto as **Exhibit I**.]

65.    "Bodily injury" is defined by the Markel Umbrella Policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

66.    "Occurrence" is defined by the Markel Umbrella Policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

67.    Upon information and belief, under Coverage B – Personal and Advertising Injury Liability in the Markel Umbrella Policies, Markel agrees to pay for the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which the insurance applies.

68.    "Personal and advertising injury" is defined by the Markel Umbrella Policies to include "[o]ral or written publication, in any manner, of material that violates a person's right of privacy."

69.    Further, upon information and belief, the Markel Umbrella Policies also include endorsements entitled "Abuse and Molestation Following Form." The endorsements provide as follows:

> This policy does not apply to the actual or threatened abuse or molestation of any person by anyone at any time except to the extent that coverage is provided by a policy or policies shown on the Schedule of underlying insurance.

## COUNT I
## Declaratory Judgment
## D & O SECTION
## USLI v. Krawatsky

70.     USLI incorporates paragraphs 1 through 69 above, as if the same were set forth at length herein.

71.     USLI believes and, therefore, avers that the D & O Section of the USLI Policy does not provide coverage for the civil proceedings filed on behalf of S.B., B.A., and O.B. against Krawatsky.

72.     Accordingly, USLI seeks a judgment declaring, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* that its coverage obligations to Krawatsky are barred and/or limited for the reasons set forth herein.

73.      The Insuring Agreement of the D & O Section requires USLI to pay "**Loss** ... that an **Insured** shall become legally obligated to pay …during the **Policy Period** … for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**."

74.     A covered "Wrongful Employment Act" includes "any … act, error, omission, misstatement, misleading statement, negligence or breach of duties, committed *or allegedly committed* … [b]y the **Individual Insureds** arising solely from duties conducted on behalf of the **Organization**…" (italicized emphasis added.)

75.     Although Krawatsky facially meets the definition of an "Insured Person" as a former employee of Camp Shoresh, the alleged acts and conduct of Krawatsky which form the bases of the civil proceedings initiated on behalf of S.B., B.A., and O.B. did not arise from Krawatsky's duties conducted on behalf of Camp Shoresh; in other words, Krawatsky's alleged

sexual abuse, molestation, and exploitation of the minor boys was not, nor could it be, conducted as part of his duties as head counselor of the day camp's lower boys division.

76.     Since the civil proceedings do not, nor could they, arise from acts allegedly conducted by Krawatsky on behalf of Camp Shoresh, USLI does not owe insurance coverage to Krawatsky under the D & O Section of the USLI Policy.

77.     Further, as set forth in the definitions subsection of the D & O Section, a covered "Loss" includes damages that are "insurable under applicable law." In other words, under the D & O Section of the USLI Policy, a covered "Loss" does not include any amount not insurable under the law.

78.     Thus, coverage for the claims against Krawatsky is barred under the D & O Section to the extent such claims are based upon or arise from his alleged sexual abuse, molestation, and/or exploitation of children, which conduct is or may be uninsurable under the law.

79.     In addition, Exclusions IV(A), IV(B), and IV(H) of the D & O Section, as set forth above, may limit or bar coverage for the civil proceedings against Krawatsky.

80.     For these reasons, USLI requests that the Court enter judgment declaring that coverage for Krawatsky is not available under the D & O Section of the USLI Policy.

81.     Further, USLI reserves the right to assert affirmatively any other matter that constitutes a ground for denying or limiting coverage under the D & O Section of the USLI Policy or under applicable law.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Krawatsky under the D & O Section of the USLI Policy.

COUNT II
**Declaratory Judgment**
**EPL SECTION**
**USLI v. Krawatsky**

82.    USLI incorporates paragraphs 1 through 81 above, as if the same were set forth at length herein.

83.    USLI believes and, therefore, avers that the EPL Section of the USLI Policy does not provide coverage for the civil proceedings filed by B.A., S.B., and/or O.B. against Krawatsky.

84.    Accordingly, USLI seeks a judgment declaring, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* that its coverage obligations to Krawatsky are barred and/or limited for the reasons set forth herein.

85.    The Insuring Agreement of the EPL Section requires USLI to pay "**Loss** … that an **Insured** shall become legally obligated to pay … during the **Policy Period** … for **Wrongful Employment Acts** arising solely out of an **Insured's** duties on behalf of the **Organization.**"

86.    Per the USLI Policy, the definition of "**Insured**" includes "**Employees**" of the organization "whose labor or service is engaged by and directed by the **Organization** while performing duties related to the conduct of the **Organization's** business."

87.    So, coverage under the EPL Section applies only to Wrongful Employment Acts which arise solely out of the Insured's duties on behalf of the Organization.

88.    As set forth in the definitions section of the EPL Section, "Wrongful Employment Act" includes any actual or alleged act of "Third Party Harassment."

89.    Per the definitions subsection of the EPL Section, "Third Party" means any "person(s) with whom an **Insured** in their capacity as such interacts while the **Insured** is performing duties related to the conduct of the **Organization's** business."

90.     "Third Party Harassment" is defined under the EPL Section to include: "Sexual **Harassment** including any unwelcome sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature against a **Third Party** <u>committed or allegedly committed by an **Insured** in their capacity as such while the **Insured** is performing duties related to the conduct of an **Organization's** business</u>." (underlined emphasis added.)

91.     Since the identified civil proceedings filed on behalf of S.B., B.A., and O.B. do not, nor could they, arise from alleged acts committed by Krawatsky in his capacity as an employee of Camp Shoresh (i.e., the alleged acts did not, nor could they, occur in furtherance of Krawatsky's duties on behalf of Camp Shoresh), USLI does not owe insurance coverage to Krawatsky under the EPL Section of the USLI Policy.

92.     Further, as set forth in the definitions subsection of the EPL Section, a covered "Loss" includes damages that are "insurable under applicable law." In other words, under the EPL Section of the USLI Policy, a covered "Loss" does not include any amount not insurable under the law.

93.     Thus, coverage for the claims against Krawatsky is barred under the EPL Section to the extent such claims are based upon or arise from his sexual abuse, molestation, and/or exploitation of children, which conduct is or may be uninsurable under the law.

94.     In addition, Exclusions IV(A) and IV(B) of the EPL Section, as set forth above, may limit or bar coverage for the civil proceedings against Krawatsky.

95.     For these reasons, USLI requests that the Court enter judgment declaring that coverage for Krawatsky is not available under the EPL Section of the USLI Policy.

96.     Further, USLI reserves the right to assert affirmatively any other matter that constitutes a ground for denying or limiting coverage under the EPL Section of the USLI Policy or under applicable law.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Krawatsky under the EPL Section of the USLI Policy.

**COUNT III**
**Declaratory Judgment**
**PUBLIC POLICY**
**USLI v. Krawatsky**

97.     USLI incorporates paragraphs 1 through 96 above, as if the same were set forth at length herein.

98.     USLI believes that extending insurance coverage to Krawatsky is unlawful because providing insurance coverage for claims arising from sexual abuse, molestation, and/or exploitation of minors is repugnant to the public policy of Maryland.

99.     Accordingly, USLI seeks a judgment declaring, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.,* that its coverage obligations to Krawatsky are barred for the reasons set forth herein.

100.    Maryland has made its policy to protect minors from abuse—including sexual abuse, molestation, and/or exploitation—abundantly clear.

101.    For example, in Maryland, it is illegal to cause sexual abuse to a minor. Md. Code Ann., Criminal Procedure, § 3-602(b)(1). Sexual abuse is defined as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." Crim Proc, § 3-602(a)(4)(i). Sexual abuse includes, but is not limited to the following: incest, rape; sexual

offense in any degree; sodomy; and unnatural or perverted sexual practices. Crim Proc, § 3-602(a)(4)(ii).

102.    In addition, Maryland law proscribes the production, solicitation, promotion, and distribution of child pornography. Crim Proc, § 11-207(a)(1)-(4).

103.    Accordingly, Maryland courts have held that the photographing of a young child for one's own benefit or advantage can constitute child abuse under Maryland law.

104.    Further, Maryland maintains a publicly accessible registry of sex offenders, and convicted sex offenders are required to register with the person's supervising authority. Crim Proc, § 11-704.

105.    In order to address and combat the problem of child abuse and neglect[5], the Maryland General Assembly enacted legislation mandating the reporting of suspected child abuse to the appropriate authorities. Section 704 of the Family Law Article designates certain persons as mandatory reporters of suspected child abuse, including suspected sexual abuse, sexual molestation, and/or exploitation. Md. Code Ann., Family Law, § 5-701, *et seq.*

106.    Health practitioners, police officers, educators, and human service workers are mandatory reporters of child abuse or neglect in the State of Maryland. Fam Law, § 5-704.

107.    In addition to those persons and officials required to report suspected child abuse, any person within the State may make such a report if that person has reasonable cause to suspect that a child has been, or is being, abused or neglected. Fam Law, § 5-704.1.

108.    Maryland courts have also recognized that the intent to injure children in sexual abuse and/or molestation cases is inherent in the very act of sexual assault and/or molestation of a minor. In other words, Maryland courts have definitively held that sexual conduct between an adult

---

[5] Maryland courts have observed that "the mute powerless victims of child abuse have long suffered at the hands of their tormentors."

and a child is so substantially certain to result in harm to the child that the injury is intentional as a matter of law.

109.    Maryland's positive law, reviewed in part above, demonstrates it would be contrary to the public policy of Maryland for an insurer, like USLI, to provide a defense and indemnification for the lawsuits against Krawatsky arising from allegations of sexual abuse, molestation, and/or exploitation of children.

110.    Accordingly, to the extent that the Policy would otherwise provide a defense and indemnification for the claims against Krawatsky, which for the reasons set forth in Counts I and II above is expressly denied, coverage under the Policy should be unavailable, inasmuch as providing coverage for claims arising out of the sexual abuse, molestation, and/or exploitation of minors is contrary to the public policy in Maryland.

111.    Thus, USLI seeks a declaration that it has no obligation to provide coverage to Krawatsky under the Policy.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that Maryland public policy prohibits an insurer from providing insurance coverage for damages resulting from the sexual abuse, molestation, and/or exploitation of children and that, therefore, United States Liability Insurance Company is not required to defend or indemnify against damages arising out of the claims set forth in the underlying actions filed on behalf of B.A., S.B., or O.B. for such immoral and intentional acts.

**COUNT IV**
**Declaratory Judgment**
**D & O SECTION**
**USLI v. Finkelstein and Camp Shoresh**

112.    USLI incorporates paragraphs 1 through 111 above, as if the same were set forth at length herein.

113.    USLI believes and, therefore, avers that the D & O Section of the USLI Policy does not provide coverage for the civil proceedings filed on behalf of S.B., B.A., and O.B. against Finkelstein and/or Camp Shoresh.

114.    Accordingly, USLI seeks a judgment declaring, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* that its coverage obligations to Finkelstein and/or Camp Shoresh are barred and/or limited for the reasons set forth herein.

115.    As outlined above, the Insuring Agreement of the D & O Section requires USLI to pay "**Loss** ... that an **Insured** shall become legally obligated to pay ...during the **Policy Period** ... for **Wrongful Acts** arising solely out of an **Insured's** duties on behalf of the **Organization**."

116.    However, the Personal Injury Exclusion Endorsement, Exclusion IV(A), provides that USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** *arising out of, directly or indirectly resulting from or in consequence of, or in any way involving* "actual or alleged *bodily injury*, sickness, humiliation, *mental anguish, emotional distress*, assault, battery, *invasion of privacy*, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use [...]." (italicized and underlined emphasis added.)

117.    Further, under Exclusion IV(H), USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** _arising out of, directly or indirectly resulting from or in consequence of, or in any way involving_ "[a]ny actual or alleged: refusal to employ; termination of employment; employment related coercion; demotion; evaluation; reassignment; discipline; workplace conditions; false imprisonment; defamation; harassment; humiliation; or discrimination of employment; other employment-related practices, policies, acts or omissions; or sexual harassment by the **Insured** against any person(s) or entity; or negligence involving any of the forgoing … [I]t being understood that this Exclusion applies whether the **Insured** may be held liable as an employer or in any other capacity and to any obligation to contribute with or indemnify another with respect to such **Claim**." (italicized and underlined emphasis added.)

118.    The claims asserted against Finkelstein and/or Camp Shoresh in the Operative Complaint consist of negligence counts (Counts 7 through 12) by each of the minor children as well as claims for intentional infliction of emotional distress (Count 16) and invasion of privacy (Count 15).

119.    The D & O Section of the USLI Policy does not provide indemnity coverage for emotional distress and invasion of privacy. (*See* Personal Injury Exclusion Endorsement, Exclusion IV(A)).

120.    Further, the D & O Section of the USLI Policy specifically excludes indemnity coverage for claims arising out of, directly or indirectly resulting from or in consequence of, or in any way involving negligence involving sexual harassment by the **Insured** against any person(s). (*See* Exclusion IV(H)).

121.    As the negligence claims against Finkelstein and/or Camp Shoresh arise solely from the alleged sexual abuse, exploitation, and molestation of minor children, indemnity coverage for those claims is expressly excluded under the D & O Section of the USLI Policy. *Id.*

122.    Further, to the extent the claims against Finkelstein and/or Camp Shoresh seek damages for injuries which arise out of bodily injury, there is no indemnity coverage under the D & O Section of the USLI Policy. (*See* Personal Injury Exclusion Endorsement, Exclusion IV(A)).

123.    For these reasons, USLI requests that the Court enter judgment declaring that coverage for Finkelstein and/or Camp Shoresh is not available under the D & O Section of the USLI Policy.

124.    Further, USLI reserves the right to assert affirmatively any other matter that constitutes a ground for denying or limiting coverage under the D & O Section of the USLI Policy or under applicable law.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Finkelstein and/or Camp Shoresh under the D & O Section of the USLI Policy.

## COUNT V
## **Declaratory Judgment**
## EPL SECTION
## USLI v. Finkelstein and Camp Shoresh

125.    USLI incorporates paragraphs 1 through 124 above, as if the same were set forth at length herein.

126.    USLI believes and, therefore, avers that the EPL Section of the USLI Policy does not provide coverage for the civil proceedings filed by B.A., S.B., and/or O.B. against Finkelstein and/or Camp Shoresh.

127.    Accordingly, USLI seeks a judgment declaring, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.,* that its coverage obligations to Finkelstein and/or Camp Shoresh are barred and/or limited for the reasons set forth herein.

128.    As outlined above, the Insuring Agreement of the EPL Section requires USLI to pay "**Loss** … that an **Insured** shall become legally obligated to pay … during the **Policy Period** … for **Wrongful Employment Acts** arising solely out of an **Insured's** duties on behalf of the **Organization.**"

129.    **Wrongful Employment Act** means any actual or alleged act of:

1.    **Discrimination;**

2.    **Harassment;**

3.    **Retaliation;**

4.    **Wrongful termination;**

5.    **Workplace Tort;**

[…]

9.    Acts described in clauses (1) through (8) above arising from the use of the **Organization's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** Internet, e-mail, telecommunication or similar systems;

[C]ommitted or allegedly committed by the **Organization** or by an **Individual Insured** acting solely within his/her capacity as such involving <u>and brought by any **Employee**, former</u>

**Employee** <u>or applicant for employment with the</u> **Organization**; or asserted against an **Individual Insured** because of his/her status as such. (underlined emphasis added.)

130.    As set forth in greater detail above, the claims asserted against Finkelstein and/or Camp Shoresh in the Operative Complaint consist of negligence counts (Counts 7 through 12) by each of the minor children as well as claims for intentional infliction of emotional distress (Count 16) and invasion of privacy (Count 15).

131.    By its very definition, indemnity coverage under the EPL Section of the USLI Policy is limited to **Claims** for **Wrongful Employment Acts** brought by "employees, former employees, or applicants for employment" which arise out of the employer-employee relationship.

132.    The claims against Finkelstein and/or Camp Shoresh in the Operative Complaint arise out of the alleged sexual assault, exploitation, and molestation of minors (i.e., non-employees) committed by an employee and, therefore, do not meet the definition of a "**Wrongful Employment Act**" under the EPL Section of the USLI Policy.

133.    Further, the Personal Injury Exclusion Endorsement, Exclusion IV(A), provides that USLI shall not be liable to make payment for **Loss** or **Defense Costs** in connection with any **Claim** made against the **Insured** *arising out of, directly or indirectly resulting from or in consequence of, or in any way involving* [a]ny actual or alleged bodily injury, sickness, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault, battery, wrongful entry, eviction, disease or death of any person, or damage to or destruction of any tangible property including any resulting loss of use. This exclusion shall not apply to **Claims** for mental anguish, emotional distress, invasion of privacy, humiliation, libel, slander or defamation that result from a **Wrongful Employment Act.**"

134.    To the extent the claims against Finkelstein and/or Camp Shoresh seek damages for injuries which arise out of bodily injury, there is no indemnity coverage under the EPL Section of the USLI Policy. (*See* Personal Injury Exclusion Endorsement, Exclusion IV(A)).

135.    Likewise, to the extent the Operative Complaint includes claims against Finkelstein and/or Camp Shoresh for mental anguish, emotional distress, or invasion of privacy, there is no indemnity coverage available under the EPL Section of the USLI Policy. *Id.*

136.    For these reasons, USLI requests that the Court enter judgment declaring that coverage for Finkelstein and/or Camp Shoresh is not available under the EPL Section of the USLI Policy.

137.    Further, USLI reserves the right to assert affirmatively any other matter that constitutes a ground for denying or limiting coverage under the EPL Section of the USLI Policy or under applicable law.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Finkelstein and/or Camp Shoresh under the EPL Section of the USLI Policy.

## COUNT VI
## Declaratory Judgment
## USLI v. Markel

138.    USLI incorporates paragraphs 1 through 137 above, as if the same were set forth at length herein.

139.    As outlined in greater detail above, the negligence claims against Finkelstein and Camp Shoresh arise from their alleged negligent employment, supervision, retention, training, investigation, and actions with respect to reporting to the proper authorities.

140.    Each of these claims fall squarely within the coverage provided by the Abuse or Molestation Coverage Endorsements contained in the Markel CGL Policies and/or Markel Umbrella Policies.

141.    Further, O.B.'s claim for invasion of privacy implicates coverage under the Abuse or Molestation Coverage Endorsements contained in the Markel CGL Policies and/or Markel Umbrella Policies.

142.    As recently as March 17, 2021, Markel made an affirmative grant of coverage to Finkelstein and Camp Shoresh for the claims asserted against them in the Operative Complaint.

143.    For these reasons, USLI requests that the Court enter judgment declaring that Markel Insurance Company is obligated to provide insurance coverage to Finkelstein and/or Camp Shoresh under Coverages A and B of the Markel CGL Policies and/or Markel Umbrella Policies and that coverage for Finkelstein and/or Camp Shoresh is not available under the USLI Policy.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that Markel Insurance Company is obligated to provide insurance coverage to Finkelstein and/or Camp Shoresh under Coverages A and B of the Markel CGL Policies and/or Markel Umbrella Policies and that coverage for Finkelstein and/or Camp Shoresh is not available under the USLI Policy.

## COUNT VII
## Declaratory Judgment– In the Alternative
## USLI v. Markel

144.    USLI incorporates paragraphs 1 through 143 above, as if the same were set forth at length herein.

145.    Should this Honorable Court find that indemnity coverage available under the USLI Policy could or does apply to the factual allegations set forth in the Operative Complaint against

Krawatsky, Finkelstein, or Shoresh—which USLI expressly denies—then any potential indemnity coverage is excess to the coverage under the Markel CGL Policies and/or Markel Umbrella Policies.

146.    For these reasons, USLI requests that the Court enter judgment declaring that the Markel CGL Policies and/or Markel Umbrella Policies are primary and that USLI's Policy is excess of and shall not contribute with the Markel CGL Policies and/or Markel Umbrella Policies.

WHEREFORE, United States Liability Insurance Company respectfully requests that this Honorable Court enter an Order declaring that the Markel CGL Policies and/or Markel Umbrella Policies are primary and that USLI's Policy is excess of and shall not contribute with the Markel CGL Policies and/or Markel Umbrella Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States Liability Insurance Company, prays that judgment be made and entered herein:

  a) declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Krawatsky under the D & O Section of the Policy;

  b) declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Krawatsky under the EPL Section of the Policy; and

  c) declaring that Maryland public policy prohibits an insurer from providing insurance coverage for damages resulting from the sexual abuse, molestation, and/or exploitation of children and that, therefore, United States Liability Insurance Company is not required to defend or indemnify against damages arising out of the claims set forth in the underlying actions filed on behalf of B.A., S.B., or O.B. for such immoral and intentional acts;

  d) declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to

Finkelstein and/or Camp Shoresh under the D & O Section of the Policy;

e)  declaring that United States Liability Insurance Company has no obligation to provide insurance coverage to Finkelstein and/or Camp Shoresh under the EPL Section of the Policy;

f)  declaring that Markel Insurance Company is obligated to provide insurance coverage to Finkelstein and/or Camp Shoresh under Coverages A and B of the Markel CGL Policies and/or Markel Umbrella Policies; and

g)  declaring that the Markel CGL Policies and/or Markel Umbrella Policies are primary and that USLI's Policy is excess of and shall not contribute with the Markel CGL Policies and/or Markel Umbrella Policies.

Respectfully submitted,

REGER RIZZO & DARNALL LLP

*Of counsel:*

Dennis St. J. Mulvihill, Esquire
PA ID # 16411
Amy V. Sims, Esquire
PA ID # 307569
BNY Mellon Center
500 Grant Street, Suite 2300
Pittsburgh, PA 15219
P: (412) 281-5431
F:  (412) 281-3711
Email: dmulvihill@rlmlawfirm.com
asims@rlmlawfirm.com

*(pending admission pro hac vice)*

/s/ Louis J. Rizzo
Louis J. Rizzo, Esquire
Bar No. 27721
1521 Concord Pike, Suite 305
Brandywine Plaza West
Wilmington, DE  19803
P: (302) 477-7100
F: (302) 652-3620
lrizzo@regerlaw.com

Dated:  5/20/2021