## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES LIABILITY        *
INSURANCE COMPANY,

     **Plaintiff,**                *

     **v.**                   *        **CIVIL NO. JKB-21-0538**

STEVEN KRAWATSKY, *et al.,*     *

     **Defendants.**           *

  *    *    *    *    *    *    *    *    *    *    *    *

### MEMORANDUM

On March 25, 2022, this Court issued a Memorandum and associated Order resolving some of the issues raised by numerous cross-motions filed by the parties to this case and staying the remainder of those issues pending disposition of the state court lawsuits underlying this insurance action (the "Underlying Lawsuits"). (*See* ECF Nos. 69, 70.) On May 6, 2022, Defendant Markel Insurance Company ("Markel") filed a Motion for Entry of Judgment under Rule 54(b) requesting that this Court direct entry of final judgment on the previously issued declaratory judgment that Plaintiff United States Liability Insurance Company's ("USLIC") duty to defend certain defendants (the "Shoresh Defendants") in the Underlying Lawsuits was excess to Markel's own duty to defend the Shoresh Defendants based on the terms of the insurance company's respective policies. (*See* ECF No. 71.) It also filed a Motion seeking a stay pursuant to Federal Rule of Civil Procedure 62(h), which permits a court to "stay the enforcement of a final judgment entered under Rule 54(b)." (*See* ECF No. 72.) USLIC has opposed both Motions, which are now ripe for

disposition without a hearing. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, a separate Order shall issue denying both Motions.

## I.    *Background*

The background of this matter is described at length in the Court's prior Memorandum and will be restated here only to the extent necessary to resolve the pending Motions. (*See* ECF No. 69.)   This matter involves a dispute about insurance coverage for consolidated tort actions presently being litigated in Maryland state court. (*Id.* at 1.) In its Motion for Summary Judgment, USLIC argued, *inter alia*, that it had no duty to defend the Shoresh Defendants in the Underlying Lawsuits because (1) it had no duty to defend under the terms of its insurance policies or (2) any duty to defend owed by USLIC was excess to the same duty owed by Markel. (*See id.* at 40–49 (addressing these arguments).) While the Court concluded that USLIC did have a duty to defend the Shoresh Defendants under the terms of its policies, it found that duty was excess to the coextensive duty owed by Markel based on the "Other Insurance" clause in USLIC's policy (the "Other Insurance Clause"). (*Id.*) The Other Insurance Clause provides that insurance coverage under USLIC's "Policy shall be excess of and not contribute with other existing insurance, including but not limited to any insurance under which there is a duty to defend, unless such other insurance is specifically written to be in excess of this Policy." (*See* ECF No. 32-7 at 50.) Notably, the Court concluded that the Other Insurance Clause rendered USLIC's duty to defend excess to Markel's despite the fact that it seemed unlikely that USLIC and Markel would have overlapping indemnification responsibilities in the event that the Shoresh Defendants were found liable in the Underlying Lawsuits. (*See id.* at 46–47.)

Although the Court definitively resolved the dispute regarding USLIC's duty to defend as well as whether that duty was primary or excess to Markel's, it did not resolve a number of other

2

issues in this case—including the relationship between USLIC and Markel's policies for purposes of (if necessary) indemnification. (*See* ECF No. 70 at 6.) Rather, it stayed those remaining matters pending disposition of the Underlying Lawsuits given that disposition of the Underlying Lawsuits was required before addressing those issues. (*Id.*; *see also* ECF No. 69 at 25–26.) Markel then moved, pursuant to Rule 54(b), for entry of final judgment on the claim that USLIC's duty to defend is excess to Markel's. (ECF No. 71.)[1]

## II.    Legal Standard

"Rule 54(b) certification is recognized as the exception rather than the norm." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). Accordingly, it "must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims[.]" *Id.* (quoting *Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981)).

To enter final judgment under Rule 54(b), a court must "first determine whether the judgment is final and second, determine whether there is no just reason for the delay in the entry of judgment." *Kinsale Ins. Co. v. JBDC Holdings, Inc.*, 31 F.4th 870, 873 (4th Cir. 2022) (internal quotation marks and citations omitted). The former determination requires that "the judgment [be] 'final in the sense that it is an ultimate disposition of an individual claim entered in the cour[se] of a multiple claims action.'" *Id.* (quoting *MCI Const., LLC v. City of Greensboro*, 610 F.3d 849, 855 (4th Cir. 2010)). The latter determination requires the district court "to conduct a case-specific inquiry, keeping in mind that this inquiry is 'tilted from the start against the fragmentation of

---

[1] Where entry of final judgment is sought to permit an expedited appeal, Courts typically refer to the entry of final judgment pursuant to Rule 54(b) as "certification . . . pursuant to Rule 54(b)." *Kinsale Ins. Co. v. JBDC Holdings, Inc.*, 31 F.4th 870, 873 (4th Cir. 2022). Accordingly, the Court's analysis uses the terms entry of final judgment and certification interchangeably.

appeals.'" *Id.* at 874 (quoting *Braswell*, 2 F.3d at 1335). This case-specific inquiry is guided by

a number of factors, including:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* The party seeking Rule 54(b) certification bears "[t]he burden . . . to demonstrate that the case

warrants certification." *Braswell*, 2 F.3d at 1335 (citing *Allis-Chalmers Corp. v. Phil. Elec. Co.*,

521 F.2d 360, 364 (3d Cir. 1975)).

### III.   Analysis

In support of its Motion for Rule 54(b) Certification, Markel predominantly argues that an

expedited appeal is warranted because the Court's ruling was legally erroneous and there are

significant financial consequences that stem from that error. (*See generally* ECF No. 71.) USLIC

opposes certification, arguing that: (1) the relevant judgment is not "final" and (2) fragmentation

of appeals in this case is not "in the interest of sound judicial administration." (*See* ECF No. 75 at

7–12.)[2]

### A.  Final Judgment

USLIC argues that Rule 54(b) certification would be inappropriate because the Court's

judgment with respect to USLIC's and Markel's duty-to-defend obligations is not "final" within

---

[2] As a procedural matter, USLIC also argues that "[a]s a general rule, it is an abuse of discretion for a district judge to certify an order under Rule 54(b) when the motion is filed more than 30 days after entry of the order." (*Id.* at 12 (citing *Schaeffer v. First Nat. Bank of Lincolnwood*, 465 F.2d 234, 236 (7th Cir. 1972)).) Markel rejoins that this rule is not as sweeping as USLIC suggests and that later Seventh Circuit cases clarify that the timing of a Rule 54(b) motion is not an independent bar on certification but merely a consideration in determining whether there is "no just reason for delay." *DaSilva v. Indiana*, 30 F.4th 671, 673 (7th Cir. 2022) ("[D]elay by the would-be appellant can translate to abuse of discretion by the district court, if the upshot is to negate the required finding of 'no just reason for delay.'"). Here, because the Court concludes that independent, substantive factors counsel against Rule 54(b) certification, it

the meaning of Rule 54(b). (ECF No. 75 at 7); *see also MCI Const.*, 610 F.3d at 855. In support

of this argument, it asserts that "the Court's Order is not a final decision since it does not

conclusively resolve all the claims asserted by [USLIC] against Markel." (ECF No. 75 at 8.)

However, a review of the relevant authorities confirms that finality can be determined at the claim,

not merely the party, level. A judgment can be "'final' [where] it is 'an ultimate disposition of an

individual *claim* entered in the course of a multiple claims action.'" *MCI Const.*, 610 F.3d at 855

(emphasis added) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)); *see also*

Fed. R. Civ. P. 54(b) (emphasis added) ("[T]he court may direct entry of a final judgment as to

one or more, but fewer than all, *claims or parties* only if the court expressly determines that there

is no just reason for delay.").

Even at the claim level, the relevant judgment is arguably non-final because the Court has

stayed consideration of how USLIC's Other Insurance clause applies to its indemnity obligations

and therefore has not fully resolved the relevant claim (Count VII). (*See* ECF No. 70 at 6.)

Although Markel cites authorities suggesting that "[d]istrict courts within the Fourth Circuit

routinely enter final judgment on duty to defend claims under Rule 54(b)[,]" (ECF No. 71-1 at 8

(collecting cases)), those cases all involved disputes between an insurer and its insured about

whether the insurer had a duty to defend *at all*. *See, e.g., Lott v. Scottsdale Ins. Co.*, 827 F. Supp.

2d 626, 640 n.24 (E.D. Va. 2011) (entering final judgment under Rule 54(b) on claim that

"Scottsdale has a duty to defend ICA/PPC in the Underlying Lawsuit"). In contrast, neither party

---

does not definitively resolve the question of whether the fact that Markel's Motion was filed 43 days after the pertinent judgment would be sufficient to vitiate a finding that there is otherwise "no just reason for delay." *Id.*; *see also Kinsale*, 31 F.4th at 873.

has identified authorities assessing finality where a court adjudicates the relationship between two insurers' established duties to defend.

Nonetheless, the Court concludes that its determination that USLIC's duty to defend is excess to Markel's is final for purposes of Rule 54(b) certification. Despite the difference in parties, the Court's judgment is still "final as to the claim that [USLIC] has [no] duty to defend . . . in the Underlying Lawsuit[s]" even if this exculpation derives from its obligations vis-à-vis Markel rather than its insured. *Church Mut. Ins. Co. v. Lake Pointe Assisted Living, Inc.*, Civ. No. REM-20-0055, 2021 WL 2136419, at *2 (E.D.N.C. May 26, 2021). While the collateral nature of this dispute is salient to the Rule 54(b) analysis, the Court believes the interrelation between the other insurance dispute and the underlying insurance obligations is relevant to considering whether there is "just reason for delay in the entry of judgment[,]" rather than to determine whether the Court's judgment was final. *Kinsale*, 31 F.4th at 873. Thus, the Court concludes that the judgment Markel seeks to certify is an "individual claim" for purposes of finality. *MCI Const.*, 610 F.3d at 855.

In the alternative, USLIC argues that this Court's judgment is not final because "grants of partial judgment that establish liability are only interlocutory." (ECF No. 75 at 7 (quoting *Kinsale*, 31 F.4th at 873).) This statement from *Kinsale*, however, relates to circumstances where a district court has granted summary judgment with respect to liability, but where the remedial aspect of a claim (typically damages) remains unliquidated. *See* 31 F.4th at 875 (quoting *Carolina Power & Light Co. v. Dynergy Mktg. & Trade*, 415 F.3d 354, 358 (4th Cir. 2005)) ("We have maintained that 'a judgment on liability that does not fix damages is not a final judgment because the assessment of damages is part of the merits of the claim that must be determined.'"). Given that USLIC's claim against Markel sought only declaratory relief, which has been granted, "it can[] be

6

said that the order [ ] left nothing more . . . to do than enforce a judgment." *Kinsale*, 31 F.4th at 876 (quoting *Calderon v. GEICO Gen. Ins. Co.*, 754 F.3d 201, 206 (4th Cir. 2014)). Accordingly, the Court concludes that its judgment regarding the applicability of USLIC's other insurance to its duty to defend is "final in the sense that it is an ultimate disposition of an individual claim entered in the cour[se] of a multiple claims action." *Id.* at 873 (internal quotation marks and citation omitted).

### B. No Just Reason for Delay

In addition to finality, the Court must also "determine [that] there is no just reason for the delay in the entry of judgment" before entering final judgment under Rule 54(b). *Id.* Although it states that none of the factors that courts conventionally consider in making this determination counsel against Rule 54(b) certification, Markel's Motion leans most heavily on the argument that this Court incorrectly applied Maryland contract principles in resolving the scope of the Other Insurance Clause. (*See* ECF No. 71-1 at 3 ("The equities favoring immediate certification are particularly strong here because the Court's duty to defend ruling improperly relieves USLIC of any primary duty to defend."), 9–15; ECF No. 76 at 4–6.) Despite this emphasis, Markel has not asked this Court to reconsider that ruling, nor has it sought certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), which "is the more appropriate course" where "accelerated appellate review of a controlling question of law is the motivating factor" for an expedited appeal. *Braswell*, 2 F.3d at 1336 n.4.

Given its choice of vehicle, it is not clear that Markel's arguments about the merits are particularly material to this Court's analysis, being at most a "miscellaneous factor[]" to be considered alongside numerous others. *Kinsale*, 31 F.4th at 874 (noting that courts should consider "miscellaneous factors such as . . . frivolity of competing claims . . . and the like"). That said,

because Markel stresses this point, the Court addresses why these merits arguments do not favor Rule 54(b) certification before turning to the remaining Rule 54(b) factors.

### 1. Relationship of Markel's and USLIC's Duties to Defend

In arguing that the Court misapplied USLIC's Other Insurance Clause, Markel does not dispute the premise that, "[i]n deciding whether one liability insurer is primary with respect to another, Maryland courts 'recognize that the rights and liabilities of different insurers should depend, as far as possible, upon the specific language of their policies.'" *Selective Way Ins. Co. v. Nationwide Prop. and Cas. Ins. Co.*, 219 A.3d 20, 46 (Md. Ct. Spec. App. 2019) (quoting *Nolt v. U.S. Fid. & Guar. Co.*, 617 A.2d 578, 582 (Md. 1993)).[3] Rather, it appears to argue that this Court's determination that USLIC and Markel would not have overlapping indemnity obligations also controls the determination of insurance priority with respect to USLIC's and Markel's duties to defend the Shoresh Defendants. (*See* ECF No. 71 at 5–6.)

That said, Markel does not precisely identify which of two logically necessary propositions it believes supports this argument, which requires the Court to conclude either that: (1) *no* other insurance language can render an insurer excess in its duty to defend where it is primary in its duty to indemnify; or (2) the language in USLIC's policy *does not* achieve this priority arrangement. A review of the authorities that Markel cites in support of 54(b) certification, however, shows that courts have either explicitly or implicitly rejected both propositions. Indeed, those authorities

---

[3] This conclusion also logically flows from the more general principle of Maryland law that the "primary task in interpreting an insurance policy, as with any contract, is to apply the terms of the contract itself[,]" *Cole v. State Farm Mut. Ins. Co.*, 753 A.2d 533, 537 (Md. 2000) (citations omitted), and that those terms control "unless a statute, a regulation, or public policy is violated thereby." *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985).

confirm that the text of the relevant policies are the central focus of the analysis and that the text of USLIC's policy is more than sufficient to support the Court's initial conclusion.

### a. Fieldston I & II

In its original analysis, the Court primarily relied on the New York Court of Appeals' opinion in *Fieldston*, which provided a factually analogous implementation of Maryland's rule requiring courts to look to policy language in determining insurer obligations. *See generally Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 945 N.E.2d 1013 (N.Y. 2011) (hereinafter "*Fieldston II*").[4]  Markel argues, however, that the more compelling analysis of the issue was provided by the intermediate appellate court that was overruled by *Fieldston II*. (*See* ECF No. 71-1 at 12); *see also Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co., Inc.*, 873 N.Y.S. 607 (N.Y. App. Div. 2009) (hereinafter "*Fieldston I*"). The *Fieldston I* court considered essentially the same argument (though on more extreme facts) presented by USLIC here, namely that:

> [R]egardless of the number of claims asserted against [an] insured[] that are covered under a policy providing primary coverage but containing such an "other insurance" clause, [the insurer] is absolved of any obligation to defend its insured as long as the complaint in the underlying action includes even a single cause of action that falls within the coverage of another primary insurer's policy, regardless of whether it also falls within the [first insured's] policy, and even though all the other causes of action fall outside the coverage of the other insurer's policy.

*Fieldston I*, 873 N.Y.S. at 610. In addressing this argument, it noted that "[t]he anomalies inherent in [this] position might well be of no moment if they were compelled by the terms of the 'other insurance' clause." *Id.* at 611. It ultimately rejected this argument, concluding that "by its plain terms the 'other insurance' clause applies only where a loss is insured under both [policies]" and

---

[4] New York, like Maryland, applies the terms of insurance policies as written in resolving insurance disputes. *Fieldston II*, 945 N.E. 2d at 1017 (citations omitted) ("In resolving insurance disputes, we first look to the language of the applicable policies. . . . If the language of the policy is determinative, we cannot rewrite the agreement by disregarding that language.").

that loss under the relevant policies only included defense costs from covered claims and not defense costs imposed by the broader duty to defend. *Id.* at 611 & n.1. Thus, the gravamen of *Fieldston I* is simply that disjunctive coinsurers both owe a primary duty to defend unless a different result is compelled by the *terms* of the applicable other insurance clause(s). *Id.* ("[T]he lack of support for Federal's position in the terms of the 'other insurance' clause is a sufficient basis for rejecting its position[.]").

 *Fieldston II* reversed on the grounds that a plain reading of the applicable clauses did compel a different result. Specifically, the salient other insurance clause provided that "coverage is excess where 'any Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies)" where "'Loss' [was] defined [to] include[] 'Defense Costs.'" *Fieldston II*, 945 N.E.2d at 1018. Applying those terms, the *Fieldston II* court concluded that "under the terms of [the] policy, there does exist 'other insurance' which would cover the 'loss' arising from the defense of the two underlying actions" rendering that policy excess regardless of the fact that the insurers would have different indemnity obligations if the underlying action were successfully prosecuted. *Fieldston II*, 945 N.E.2d at 1018. Although the additional authorities cited by Markel show that *Fieldston II* is perhaps the broadest application of this language in other insurance clauses, a review of those authorities does not disturb the Court's conclusion regarding the applicability of USLIC's Other Insurance clause in this case.

### b. Other District Court Cases

 Specifically, Markel notes that *Fieldston II's* conclusion has been cabined by other federal district courts that have considered insurance policies containing other insurance clauses similar to the one at issue in *Fieldston*—i.e., other insurance clauses triggered where a "Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies)[.]" *Fieldston II*,

945 N.E. 2d at 1018. In discussing a similarly phrased clause, the Southern District of New York concluded that this policy language contains "the conditional requirement that it be on account of a *covered* claim" and thus the applicability of such language is narrowly confined to cases where there is a "possibility that both policies concurrently cover[] at least one cause of action." *Greater N.Y. Mut. Ins. Co. v. Cont. Cas. Co.*, Civ. No. JGK-19-3268, 2020 WL 5370419, at *7 (S.D.N.Y. Sept. 8, 2020) (emphasis added). Though on different reasoning, a court in this District similarly concluded that an other insurance clause triggered if "any Loss under this Coverage Section is insured under any other valid and collectible insurance policy(ies)"[5] was inapplicable where the relevant policies potentially indemnified the insured only for distinct risks. *Fed. Ins. Co. v. Firemen's Ins. Co. of Wash., D.C.*, 769 F. Supp. 2d 865, 869, 876 (D. Md. 2011) (hereinafter "*Firemen's I*").[6]

However, even courts that have limited *Fieldston II*'s holding to its facts have not endorsed Markel's position that *broader* contract language cannot serve as the basis for finding that an insurer who is primary in its duty to indemnify is nonetheless excess in its duty to defend. In fact, at least one of those courts has found exactly the opposite, explaining that a policy that "defined 'Loss' as 'total amount . . . which any Insured becomes legally obligated to pay as the result of *all Claims* . . . made against any Insured'" was distinguishable and would render an insurer excess in its duty to defend regardless of whether it had a concomitant duty to indemnify. *Cont. Cas. Co.*,

---

[5] Loss in the relevant policy was "defined to include 'Defense Costs' incurred *in connection* with a 'Claim.'" *Firemen's I*, 769 F. Supp. 2d at 868 (emphasis added).

[6] To the extent that *Firemen's I* endorses a broader rule regarding other insurance clauses, it was not applying Maryland law's requirement that "[i]n deciding whether one liability insurer is primary with respect to another . . . 'the rights and liabilities of different insurers should depend, as far as possible, upon the specific language of their policies." *Selective Way Ins. Co.*, 219 A.3d at 46; *see also Fed. Ins. Co. v. Firemen's Ins. Co. of Wash., DC*, Civ. No. AW-09-2361, 2011 WL 2710458, at *5 (D. Md. July 11, 2011) (denying reconsideration because "the Fourth Circuit continues to evaluate the applicability of 'other insurance' clauses by determining whether the contending insurers cover the 'same risk'"). It also appears that the applicability of the other insurance clauses was only nominally briefed before that Court. *See Firemen's I*, 769 F. Supp. 2d at 875–76 (noting that one insurer cited only two cases, including *Fieldston I*, and the other did not respond to those citations).

2020 WL 5370419, at *7 (citing *Admiral Indem. Co. v. Travelers Cas. & Sur. Co. of Am.*, 881 F. Supp. 2d 570, 575 (S.D.N.Y. 2012).

The decision in *Admiral* is particularly difficult to square with Markel's view of these relevant authorities. In *Admiral*,[7] an insurer raised two arguments for why they were not required to contribute to defense costs in an underlying tort case: (1) that its "Other Insurance clauses control[led]" and (2) that "even if the Other Insurance clauses did not excuse [its] failure to defend . . . [the policy's] Property Damage Exclusion applied to all of the claims in the [underlying action.]" 881 F. Supp. 2d at 575. Finding that the other insurance clauses rendered the insurer excess in its duty to defend, the *Admiral* court concluded that "it [was] unnecessary to reach the arguments relating to the scope of the [ ] Property Damage Exclusion." *Id.* Thus, *Admiral* squarely holds that where the language of the other insurance clause dictates priority with respect to duty to defend, it is unnecessary to even consider whether the insurer has an overlapping duty (or in fact, any duty) to indemnify the coinsured.[8] Markel does not address *Admiral*, nor explain how its holding can be reconciled with Markel's reading of other persuasive authorities.

In sum, a synthesis of the additional authorities that Markel provides establishes only the limited proposition that an other insurance clause triggered by "Loss arising from any claim made against the Insured(s) is insured under any other valid policy(ies)" *may* provide an insufficient textual basis to render an insurer excess with respect to defense costs where that insurer does not have overlapping indemnity responsibilities with the putative primary insurer. They do not, however, support Markel's implicit position that there is *no* contractual language that can

---

[7] Like this Court, the court in *Admiral* concluded that the other insurance issue was analogous to *Fieldston II*, finding the language in the relevant policies materially indistinguishable. 881 F. Supp. 2d at 576–77.
[8] In *Admiral*, the putative primary insurer had disclaimed coverage obligations for all but three claims—making it plausible that the two insurers had only disjunctive indemnity obligations. *See* 881 F. Supp. 2d at 573. As noted, the *Admiral* court did not reach this issue.

12

accomplish this particular priority arrangement. To the extent that such a principle exists in any

authority, Markel also fails to explain why its applicability to this case is not foreclosed by the

Maryland courts' recent reiteration that, "[i]n deciding whether one liability insurer is primary with

respect to another, Maryland courts 'recognize that the rights and liabilities of different insurers

should depend, as far as possible, upon the specific language of their policies.'" *Selective Way*,

219 A.3d at 46 (quoting *Nolt*, 617 A.2d at 582).

Turning to the narrower question of applying the terms of the Other Insurance Clause

confirms that Clause renders USLIC excess given the overlap between USLIC's and Markel's

duties to defend the Shoresh Defendants. The applicability of the Other Insurance Clause is not

tied to a defined term such as Loss, but rather renders USLIC "excess of [ ] other existing

insurance, including but not limited to any insurance *under which there is a duty to defend*." (ECF

No. 32-7 at 50 (emphasis added)); *see also Aetna Ins. Co. v. Aaron*, 685 A.2d 858, 862 (Md. Ct.

Spec. App. 1996) ("The duty to defend is broader than and different from the duty to pay."). In

short, the authorities Markel cites do not establish that USLIC *cannot* contract away primary

insurance responsibility, nor that the terms the Other Insurance Clause *do not* do so in this case.

Accordingly, the Court finds that there is not sufficient doubt about the propriety of its prior ruling

to favor an expedited appeal.[9]

### 2. Interrelated Claims and Possibility of Repetitive Consideration

Further, "the relationship between the adjudicated and unadjudicated claims" and "the

possibility that the reviewing court might be obliged to consider the same issue a second time"

---

[9] While Markel did not request certification under 28 U.S.C. § 1292(b), the Court finds that this is a useful benchmark
for considering whether there is sufficient uncertainty about this legal issue that the equities favor an immediate appeal.
Generally under § 1292(b), "the mere fact that an issue is one of first impression or that there is a lack of unanimity is
not enough to meet this prong[.]" *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320,
321 (E.D. Va. 2016) (citation omitted). Here, moreover, the lack of unanimity appears unrelated to a question about
controlling law, but rather stems from how that law applies to particular terms in an insurance contract. *Id.* (emphasis
added) ("A substantial ground for difference of opinion arises only if [a] disagreement on *controlling law* exists

both counsel against Rule 54(b) certification. *Kinsale*, 31 F.4th at 873. Beginning with the first factor, the issue that Markel asks this Court to certify—the scope of USLIC's Other Insurance clause with respect to defense costs—is closely related to an unadjudicated claim: the applicability of that same clause to indemnity obligations. (*See* ECF No. 70 at 6 ("USLIC's claim that its duty to indemnify the Shoresh Defendants is excess of Markel's duty to indemnify the Shoresh Defendants is stayed pending resolution of the Underlying Lawsuits.").) This analytical overlap also creates the "possibility that the reviewing court might be obliged to consider the same issue a second time[.]" *Kinsale*, 31 F.4th at 873, 876 ("It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below.").

This risk is increased by the fact that the Court's conclusion regarding the relationship between Markel's and USLIC's insurance obligations is contingent on other issues resolved in this case but that would be outside the scope of Markel's requested Rule 54(b) certification. Specifically, the Court's conclusion that USLIC and Markel do not have potentially concurrent indemnity obligations flowed from this Court's rejection of the Shoresh Defendants' argument that USLIC's policies potentially covered Counts 7-12 in the Underlying Lawsuits. (*See* ECF No. 69 at 39–40.) Should the Court of Appeals disagree with that conclusion, it would then have to revisit the applicability of the Other Insurance Clause given Markel's view that the presence of concurrent indemnity obligations is a significant factor in determining whether that clause impacts USLIC's and Markel's relative obligations. The intertwined nature of these claims militates against separating an appeal of USLIC's obligations with respect to Markel on defense costs from USLIC's obligations with respect to both Markel and the Shoresh Defendants on indemnification.

---

between courts[.]"). Last, Markel has not shown that there is even a difference of opinion with respect to the particular facts at issue in this case.

*Kinsale*, 31 F.4th at 876 (finding entry of final judgment under Rule 54(b) inappropriate where appealed judgment was "interrelated or inextricably intertwined" with other claims). These factors provide "just reason for delay[,]" particularly given that the Court's analysis is "tilted from the start against the fragmentation of appeals." *Id.* at 874 (internal quotation marks and citation omitted).

### 3. *Judicial Administration and Equitable Considerations*

This conclusion is not countermanded by the broader considerations that inform the Court's exercise of 54(b) discretion: "the interest of sound judicial administration and [consideration of] the equities involved." *Kinsale*, 31 F.4th at 876 (internal quotation marks and citation omitted). Although Markel cites several cases where other district courts have entered final judgment under Rule 54(b) on duty to defend claims, (*see* ECF No. 71-1 at 8 (collecting cases)), those cases (as noted) involved adjudications of the duty to defend between an insurer and its insured. Considerations of judicial administration more clearly favor an expedited appeal in that posture because "an appellate decision finding no duty to defend would moot the remaining duty to indemnify claim and end th[e] case." *Peace Coll. of Raleigh, Inc. v. Am. Intern. Spec. Lines Ins. Co.*, Civ. No. LWF-09-0479, 2010 WL 3743539, at *11 (E.D.N.C. Sept. 16, 2010) (citing *Penn-Am. Ins. Co. v. Mapp*, 521 F.3d 290, 296 (4th Cir. 2008)); *see also Church Mut. Ins. Co.*, 2021 WL 2136419, at *2 ("[A]n appellate ruling reversing this court's finding of a duty to defend would end this coverage case[.]"); *Lott*, 827 F. Supp. 2d at 640 n.24 ("An appellate ruling that Scottsdale is not obligated to defend would moot the indemnification issue, thus the interests of judicial economy are best served by Rule 54(b) certification."). Though less conclusive, the opposite ruling by the court of appeals in such cases also promotes judicial economy because it "result[s] in a definitive finding that [the insured] be furnished a defense in the Underlying Lawsuit and may

propel that matter to swift resolution." *Church Mut. Ins. Co.*, 2021 WL 2136419, at \*2. Here, in contrast, the provision of a defense in the Underlying Lawsuits is not in doubt and a ruling by the court of appeals, at best, marginally advances a single claim in this lawsuit by clarifying the scope of the Other Insurance Clause.[10] (*See* ECF No. 17 ¶¶ 144–146.) Thus, considerations of judicial administration do not favor an expedited appeal in the same manner that they do in other permutations of the duty to defend question.

At bottom, Markel's claim is that the equities favor an expedited appeal because the Court's judgment requires them to bear the entirety of the defense costs in the Underlying Lawsuits, rather than apportioning those costs on a pro-rata basis with USLIC.[11] However, to substantiate that the equities are facially sufficient to warrant an early appeal, "the district court [must] explain why [the movant] 'would suffer undue hardship if final judgment' was not entered and certified for immediate appeal." *Kinsale*, 31 F.4th at 876. The Court concludes that maintaining the present distribution of defense costs until an appeal can be had in the ordinary course of this litigation does not constitute a sufficiently undue hardship to justify entry of final judgment under Rule 54(b) for two main reasons. First, as the Fourth Circuit explained in *Mapp*, an expedited appeal is not

---

[10] Specifically, a clarification of the applicability of the Other Insurance Clause may advance this Court's analysis as to how that clause applies in the context of USLIC and Markel's indemnity obligations. (*See* ECF No. 70 at 6 (staying consideration of this claim).) That said, this Court's prior holding suggests that claim may largely be mooted by the fact that USLIC and Markel will have no overlapping indemnity obligations and USLIC does not appear to seriously argue that it can be an excess indemnity insurer on such facts. (*See* ECF No. 69 at 46–47 (rejecting this argument but noting that "it is not clear whether USLIC presses this argument through its briefing").) If so, then an early disposition of the other insurance dispute by the court of appeals will in no way promote efficient judicial administration.

[11] It appears that this pro-rata agreement required USLIC to pay 10% of the defense costs. (*See* ECF No. 71 ¶ 17 (citing ECF No. 50-8) ("USLIC and Markel have been operating under an agreement to share the costs for defending the Shoresh Defendants in the underlying lawsuit on a pro-rata basis."); ECF No. 50-8 at 3 ("By way of compromise . . . [USLIC] is willing to share defense costs on a pro-rata basis (which is 10 percent in light of [the relevant policies])").) If so, this case is even more distinct from duty-to-defend disputes in the insurer-insured context where the question before the court is typically an all-or-nothing assignment of defense costs to an insurer. *Cf. Lott*, 827 F. Supp. 2d at 640 (concluding that "[the insurer] has a duty to defend all allegations in the Underlying Complaint in the event that any are covered and, as discussed, [some are covered]."). Here, in contrast, the Court appears to have adjudicated only the hairsplitting proposition of whether Markel's interim share is 100% or 90% of defense costs. However, because the court concludes that the equities disfavor an expedited appeal regardless of the cost split borne by Markel, it need not conclusively resolve the actual stakes of this dispute.

necessary for Markel to obtain complete relief from this Court's judgment as there is "no impediment to [Markel's] future ability to appeal the district court's ruling[.]" 521 F.3d at 297. Second, Markel identifies no collateral harms that it will incur from having to bear these putatively additional costs until the Court's judgment can be reviewed in the ordinary course. *Cf. Curtiss-Wright Corp.*, 446 U.S. at 6, 11 (affirming district court's entry of final judgment under Rule 54(b) where district court found that prevailing litigant "would suffer severe daily financial loss from nonpayment of the $19 million judgment because current interest rates were higher than the statutory prejudgment rate, a situation compounded by the large amount of money involved"). Given that an expedited appeal (and accompanying stay of the judgment) is not required to either avert immediate harm to Markel or to provide it with a complete remedy on appeal, the Court concludes that there is no undue hardship warranting entry of final judgment under Rule 54(b).

In sum, Markel has not met its burden of establishing that this is the exceptional case warranting entry of final judgment under Rule 54(b). *Braswell*, 2 F.3d at 1335. Though the Court's judgment requires Markel to bear a larger portion of defense costs than it believes it is required to, Markel has not shown that this averred error cannot be corrected in full by a non-expedited appeal. Moreover, unlike the duty-to-defend cases Markel has cited, an expedited appeal of the duty-to-defend issue provides little benefit to efficient judicial administration and potentially creates significant judicial economy problems given the interrelated nature of that judgment and the remainder of this case. Finally, to the extent that Markel relies on the merits of its claim in seeking 54(b) certification, that argument is procedurally tangential to the Court's analysis. To the extent an assessment of the merits is relevant, the Court finds that Markel's arguments on that front are substantively inadequate to overcome both the specific Rule 54(b) factors that counsel against entry of final judgment and the general "policy against 'piecemeal

appeals when multiple claims are resolved in the course of a single lawsuit[.]'" *Kinsale*, 31 F.4th at 877 (quoting *Braswell*, 2 F.3d at 1335). This is simply not the "rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain contestants below." *Braswell*, 2 F.3d at 1336. Accordingly, Markel's Motion for Rule 54(b) Certification (ECF No. 71) will be denied.

### C.  *Rule 62(h) Stay*

The Court's conclusion that entry of final judgment is unwarranted under Rule 54(b) also moots Markel's Motion to Stay Enforcement of "the Court's March 25, 2022 Order granting summary judgment to USLIC on its duty to defend claim against Markel and declaring that USLIC's duty to defend is excess over Markel's duty," under Federal Rule of Civil Procedure 62(h). (ECF No. 72 at 1.) That section only permits the Court to "stay the enforcement of a final judgment entered under Rule 54(b)" a condition precedent which has not occurred. Fed. R. Civ. P. 62(h).

### IV.   *Conclusion*

For the foregoing reasons, a separate Order shall issue denying Markel's Motion for Rule 54(b) Certification (ECF No. 71) and denying as moot Markel's Motion to Stay Enforcement (ECF No. 72).

DATED this ____6____ day of July, 2022.

BY THE COURT:

James K. Bredar

James K. Bredar
Chief Judge